## EDMUND BAKER *versus* ISAAC SANDERSON.

In case for obstructing the plaintiff's mills, the declaration alleged that the mills **were** leased, and that in consequence of the obstruction the tenants had threatened to quit, and the plaintiff had therefore been constrained to make a reduction in the rents. *Held*, that a sufficient cause of action was here set forth, and that a recovery would be a bar to any action by the tenants for the same obstruction.

The owner of a mill above a bridge, and of another below, conveyed this last, giving to the grantee a right " to make and maintain a dam to accommodate said mill, below the bridge," of a certain height. The grantee repaired and rebuilt, with some alteration, an old dam, which satisfied the terms of the deed, and afterwards built another dam below the bridge of the same height, the effect of which was to throw more water into his pond, and to injure the mill above the bridge. *Held*, that he had a right to maintain one dam only, and that the erection of the new dam was not authorized by the grant.

In an action by one of two grantors against the grantee, in which the construction of the deed came in question, it was *held*, that the other grantor was a competent witness, to establish a collateral fact as to the situation of the premises at the time of the grant.

THIS was an action upon the case, in which the plaintiff declared that the defendant, by erecting a dam on Neponset river below the plaintiff's mills, had obstructed the ancient course of the water and caused it to flow back upon the wheels of the plaintiff's mills, whereby they were retarded.

The declaration contained two counts. In the first, the plaintiff declared, that on the 25th of November, 1822, he was *seised and possessed*, and had been ever since seised and possessed of certain *ancient* mills, viz. a paper mill, grist mill, chocolate mill and woollen factory, situated near each other on Neponset river, above Milton bridge, and that he ought to have a free passage for the water to run off from the wheels, and that the defendant erected a dam across the river below the bridge, which obstructed the water, &c. In the second count he declared, that he was seised of a mill, called a paper mill, which was in lease to one Tileston and others as tenants at will, and that in consequence of the obstruction the power of the mill was so much diminished, that the tenants refused to pay the same amount of rent as they did before, and threatened to leave the mill ; wherefore the plaintiff had been constrained to reduce his rent.

At the trial, before *Wilde* J., it appeared, that at a short distance above Milton bridge are situated two sets of mills,

one on the northwest side of the river belonging to Baker, being the several mills mentioned in the declaration, the other on the southeast side belonging to D. T. Vose. These two sets of mills have one common dam and pond, and by an agreement made in 1795 between the respective owners at that time, the water was to be used on alternate days in cer tain seasons of the year ; and that agreement still regulates the use of the water between the present owners. At that time D. Vose was owner of D. T. Vose's mills above the bridge and of the defendant's mill, hereafter mentioned, below the bridge ; and the then owner of the plaintiff's mills granted to D. Vose, for the use of his mill below the bridge, the right to turn out all the water from the raceway of what are now the plaintiff's mills, to what is now the defendant's mill.

Below the bridge the defendant owns a mill on the southeast side of the river, and one Preston another on the northwest side, both depending for their supply of water upon what flows over or through the dam and flumes of the mills above the bridge.

In 1810 Baker and D. T. Vose were owners of the two sets of mills above the bridge, and on the 2d of July, 1810, Baker and wife and D. T. Vose, devisees of D. Vose, sold the defendant the mill below the bridge, by a deed containing the following clause ; — "And the said Isaac Sanderson, his heirs and assigns for ever, has hereby a right granted him or them, to make and maintain a dam to accommodate said mill, below the bridge, on a level with the top of said hole drilled in said rock, and another drilled into the same rock, both hav ing iron bolts drove into the same, and are on a level, one with another, but the said dam shall not at any time be built higher than the tops of said holes in said rock." Vose, one of the grantors, being called as a witness, though objected to by the defendant, stated that when they were about to make the deed to Sanderson, his pond was filled and the gates shut and the places marked where the water flowed on the rock ; that the holes were then drilled and the bolts driven, and the deed made and delivered.

Sanderson had been in the occupation of his mill several years under a lease from D. Vose, and after his purchase he

350

repaired and rebuilt the old ston : dam, removing the lower part about six feet towards the centre of the stream, by which means he had a better pond, and in 1820 he again repaired and rebuilt the old dam, and he never had any other dam until in 1822 he built the dam complained of; previously to which he had built a new vat to his mill, and a new mill. This last dam was built by him for the accommodation of his mill, and not higher than the holes in the rock, but in a different place from the ancient dam, (which he still maintained,) and he contended that he had a right under the deed so to build it ; but in order to ascertain the damage, if any, this point was, *pro formâ*, ruled against him. It was proved that this dam threw back and raised the water under the plaintiff's wheels from six to twelve inches higher than before. It extended from the south-easterly side of the river to Preston's dam, with which it was united.

The whole evidence of the plaintiff's damage applied to the diminution of power and profits during the time complained of, and it appeared that his mills had been occupied by different lessees, (except for a short time when some of them were occupied by himself,) who paid him rent, the grist mill being let upon shares, the chocolate mill for a sum proportioned to the quantity of chocolate manufactured, and the others at a fixed sum *per annum ;* and that from these rents the plaintiff had made deductions, supposed to be equivalent to the tenants' loss of profits. The defendant objected, that as the mills were in the occupation and possession of tenants not parties to the suit, the damage proved, if any, affected only their possession or annual profits, and the plaintiff could not recover, or at least that he could recover only in proportion to his interest in these profits ; but the jury were directed, that they should award to the plaintiff all the damage which during the time complained of they should find had been occasioned by the defendant's dam. The jury found a verdict for the plaintiff according to this direction.

If the Court should be of opinion, that the defendant's deed authorized him to build the dam complained of, or that the plaintiff was not entitled to any part of the damages found by the jury, or that Vose's testimony, if it affects the con-

struction of the deed unfavorably to the defendant, ought not to have been admitted, then the verdict was, by agreement, to be set aside and a verdict entered for the defendant. If the Court should think that the defendant had no right to build the dam, and that the plaintiff was entitled to a part, but not the whole of the damages found, a new trial was to be granted.

The defendant also moved in arrest of judgment, because the damages were general upon both counts, and the second count stated no cause of action for which the plaintiff could recover.

*W. Sullivan* and *Gorham*, for the defendant. The plaintiff *Oct. 27th.* should recover damages only for the time during which he was himself in the possession of his mills ; for the reduction of the rent will not protect the defendant against an action by the tenants, it being *res inter alios acta.* The verdict is general on both counts. In the second count the plaintiff declares only that he was seised, and sets forth an injury to the annual profits only, for which he is not entitled to recover. 1 Chit. Pl. 142. [*Wilde* J. Here were covenants on which he was liable to his lessees.] Supposing that the leases contained the usual covenants, as for quiet possession, &c., there is no covenant against the unlawful acts of third persons.

But the principal question relates to the construction of the deed to the defendant. This deed authorizes him to build " a dam." The only restriction as to place is, that it shall be built below the bridge. The grantors had a right to make a dam anywhere below the bridge, and they have granted that right to the defendant, restraining him only in regard to the height of the dam. The parties may have been deceived in the operation of their contract, but they are nevertheless bound by it. The deed is not ambiguous, but if it were, it should be taken most strongly against the grantors.

*Richardson* and *Cushing*, *contrà*. The argument for the    352 defendant proceeds on the ground that the new dam was built on the granted premises. We say that it was not. [*Wilde* J. The fact was not ascertained at the trial.] The words of the deed being general, that the grantee may make " a dam," creates an ambiguity ; and the question is, what dam was meant. The grant is satisfied within the rights of the parties

Baker
*v.*
Sanderson.

March 28th,
1826, *in*
.Suffolk.

by the old dam ; *Whitbread* v. *May*, 2 Bos. & Pul. 597 *Doe* v. *Oxenden*, 3 Taunt. 147 ; *Doe* v. *Greening*, 3 Maule & Selw. 171 ; and as the defendant had a right to make only one dam, by repairing and altering the old dam he is precluded, on the ground of election, from making another in a different place. He has given his own construction to the grant. 3 Atk. 577 ; *Cooke* v. *Booth*, Cowp. 819. The second count was formed from the precedent in *Leader* v. *Moxton*, 3 Wils. 461.

WILDE J. delivered the opinion of the Court. The defendant moves for a new trial, and also in arrest of judgment.

In support of the motion in arrest, he relies on the objections made to the second count. In this count the plaintiff declares, that, at the time when his mills were obstructed in their operations, the same were, during a part of the time, in the possession of sundry tenants under the plaintiff. And the defendant's counsel contend, that for the damages arising during this portion of the time, he was, and still is, responsible to the tenants in possession, and not to the plaintiff, who had only a reversionary interest. This objection would have been in superable, had it not been alleged, that the plaintiff, in consequence of the obstructions complained of, had reduced his rents, at the request of the tenants, they threatening to quit unless he would agree to a fair reduction ;[1] that he did so agree, and that the tenants were satisfied with the reduction made. After such an agreement they could not maintain an action against the defendant, for damages occasioned by the obstructions complained of. That agreement and the plaintiff's recovery in this case, will be a good bar to any action that may be brought in the names of the tenants.[2] The complaint is of the injury suffered in the reversionary interest. No other damages were proved applicable to the second count, than those arising from the reduction of the rents, and no other damages could have been considered by the jury. It is very clear we think, that to damages thus assessed there can be no legal objection. We consider therefore the second count as good in substance and in form. All the material facts are

---

[1] See the remarks of *Putnam* J. in *Sumner* v. *Tileston*, 7 Pick. 206

[2] *Sumner* v. *Tileston*, 7 Pick. 198

Baker
*v.*
Sanderson.

well alleged, and if the plaintiff could not recover in a special action of the case in this form, he would be without remedy.

As to the motion for a new trial, the first objection made to the verdict is, that the evidence does not support the first count. If this were true, it would not be a valid objection, provided both counts are substantially for the same cause of action. The rule is, that where there is but one cause of action, and there are several counts, and a general verdict is returned, the Court will not arrest judgment although one count be bad, but will allow the verdict to be altered so as to refer to the good count. So if the evidence supports one count, and not the others, no new trial will be granted, but judgment will be entered according to the verdict. For as there is but one cause of action, it is immaterial on which count the verdict is taken, or whether it be general or special.[1]

In the present case, however, the evidence applied partly to one count and partly to the other. It was proved, that for a short time the mills were occupied by the plaintiff, and as to the damages accruing during that time, he had a right to recover on the first count ; and as to the residue of time, when the mills were in the occupation of the tenants, the evidence was only applicable to the second count, so that both counts are supported by the evidence, and are necessary.[2] The verdict is general, and this is right.

The second objection to the verdict is the most important, and involves a supposed misdirection to the jury, and a mis construction of the deed under which the defendant claims.

The clause to which this objection refers is in the words following, viz. " And the said Isaac Sanderson, his heirs and assigns for ever, has hereby a right granted him or them, to

---

[1] See *Cornwall* v. *Gould*, 4 Pick. 446; *Kingsley* v. *Bill*, 9 Mass R. (Rand s ed.) 200, n. (*a*).

[2] But see *Sumner* v. *Tileston*, 7 Pick. 198, where it was alleged, that the plaintiff was seised and possessed of the mill, and the evidence was that it was occupied by a tenant at will at a rent reduced &c., and it was held, that the declaration was supported, for that the possession of the tenant was the possession of the plaintiff; *Putnam* J dissenting.

make and maintain a dam to accommodate said mill, below the bridge, on a level with the top of said hole drilled in said rock, and another drilled into the same rock, both having iron bolts drove into the same, and are on a level one with another ; but the said dam shall not, at any time, be built higher than the tops of said holes in said rock "

The question of construction is, whether, under this clause in the deed, the defendant had a right to erect the dam complained of. It appeared in evidence that the defendant, after his purchase, repaired and rebuilt an old dam, which was standing at the time of the grant, removing the lower part about six feet towards the centre of the stream, by which means he had a better pond ; and that he then built a new vat to his mill, and built a new mill about two years before the erecting of the dam complained of; and that in 1820 he again repaired and rebuilt the old dam, and never had any other until he built the dam complained of, in 1822. The old dam thus rebuilt was on a level with the holes in the rock, and in all respects corresponded with and satisfied the terms of the clause referred to. It did not extend across the river, but from the bridge down to defendant's mills, so as to raise a pond on the southerly side of the stream. On the northerly side, contiguous thereto, was Preston's pond, and his dam was five or six inches lower than the defendant's The dam complained of was extended from the southeasterly side of the river to Preston's dam, and its operation was, to raise the water in Preston's pond, and to throw it back into the plaintiff's raceway, and thereby to supply the defendant's pond with water through the gap mentioned in the report. It did not regulate the height of the defendant's pond, and therefore it is obvious that it was not such a dam as was intended by the clause in the deed referred to. The defendant, by the deed, is entitled to but one dam ; he has no right to erect one for the purpose of supplying his pond with water, and another for the purpose of regulating its height.

As to the testimony of Vose, we think it was admissible by the rules of evidence. It only went to establish a collateral fact as to the situation of the premises at the time of

the grant.[1] But in the construction of the deed we do not rely on Vose's testimony, and it is therefore immaterial whether it is admissible or not.

*Judgment according to the verdict.*

---

[1] As to the admissibility of parol evidence in such a case, see 2 **Stark.** **Evid.** (5th Amer. edit.) 561, n. 1.